AMERICAN GLUE Co. *v.* UNITED STATES (No. 1197).[1]

1. EVIDENCE—ERROR.

    The importer having made out a prima facie case that the goods received at his factory and used there were the goods imported, it was error to refuse to allow him to show the nature and character of the goods he did in fact receive and the use to which these were put.

2. SAMPLES—GLUE STOCK—FUR WASTE.

    The issue in this case was fully presented—namely, was the importation glue stock or fur waste? And the record contains nothing to show satisfactorily that the samples employed for assessment purposes were true samples, but, rather, the contrary.

United States Court of Customs Appeals, December 15, 1913.

APPEAL from Board of United States General Appraisers, Abstract 32266 (T. D. 33409).

[Reversed.]

*Walter Evans Hampton* for appellant.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

    Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

One hundred and twenty-five bales of merchandise imported at the port of New York were classified by the collector of customs as "fur waste" not specially provided for and assessed for duty at 10 per cent ad valorem under the provisions of paragraph 479 of the tariff act of 1909, which paragraph reads as follows:

479. Waste, not specially provided for in this section, ten per centum ad valorem.

The importers objected to the classification of the goods and the assessment of duty thereon by the collector, and in their protest set up among other grounds of objection the claim that the merchandise was glue stock, entitled to admission free of duty under the provisions of paragraph 584 of the free list, which reads as follows:

584. Hide cuttings, raw, with or without hair, and all other glue stock.

The Board of General Appraisers overruled the protest and this appeal resulted.

From the uncontradicted testimony in the record it appears that 47 bales of merchandise marked "H" and 78 bales of merchandise marked "K," invoiced by J. Hückel's Söhne, of Neutitschein, Austria, to the American Glue Co., as glue stock were brought into the port of New York by the steamship *President Lincoln* on August 11, 1909.

[1] Reported in T. D. 34006 (25 Treas. Dec., 692).

On the same date and by the same vessel there arrived in the port of New York 27 bales of merchandise marked "H" and 29 bales of merchandise marked "K," which were invoiced by J. Hückel's Söhne to Julius Kruchten as animal hair.

On August 14 the goods consigned to Kruchten were entered and a permit was issued by the deputy collector to land and deliver the same, reserving out bale 28 of the mark K and bale 3 of the mark H to be sent to the appraiser's stores for examination.

The goods imported by Kruchten were small pieces of rabbit skin with the fur on, which were returned as "raw rabbit snips," dutiable as fur waste. Customs Examiner Hare, who examined the merchandise covered by the Kruchten invoice, testified on the hearing before the board that the "snips" were similar to the sample retained by the customs officers as the official sample taken from the importation made by the American Glue Co.

The examiner made no personal examination of any of the bales of merchandise invoiced as glue stock, but determined the character of that importation from a sample submitted to him by Sampler Smith and purporting to have been taken from two of the bales imported by the American Glue Co. No particular precautions seem to have been taken against mistaking one H. K. importation for the other, and consequently whether the sample on which the classification of the goods was made was actually taken by Smith from the H. K. consignment of the American Glue Co. rather than from the H. K. consignment of J. Kruchten is left open to serious question. In his testimony before the board Smith stated that he recollected a lot of some 125 bales of glue stock which arrived in August, 1909, and were discharged from the *President Lincoln* at Pier 3, Hoboken, port of New York, on a permit by virtue of which he was to take samples for examination from two bales of the goods. In this connection it should be noted that the permit for the landing of the American Glue Co.'s goods did not call for the examination of two bales, but that the permit issued to Kruchten did specify for examination bale 3 of mark H and bale 28 of mark K. Smith further stated that he found but one lot of goods marked "H. K.", and that he sampled the only lot of H. K. which came to his attention, but that he did not notice whether any of the lot was consigned to the American Glue Co. According to Smith's testimony he did not observe the numbers of the bales on the lot of H. K. which came to his attention, but took at random, so to speak, one sample from a bale marked "H," and another from a bale marked "K," which samples were not preserved as separate samples, but were put together as a single sample. Smith says that on the day on which the samples were taken by him he was the only sampler on the dock on that ship and that the official sample represents the samples which he took. From this testimony it is apparent that Smith considered

that there was but one lot of goods marked "H. K.", and that taking no note of the numbers on the bales, he was just as likely to have taken a sample from the importation made by Kruchten as from that made by the American Glue Co., if both importations were on the dock at the same time.

The importing company contended before the board and contends on this appeal that the sample on which this importation was classified was not taken from the importation and that as a matter of fact the 125 bales of merchandise delivered to it under the permit from the customhouse was glue stock and not the "raw rabbit snips" represented by the official sample. In support of .this contention William J. Glacken testified on behalf of the importer that 125 bales of glue stock consigned to the American Glue Co. were brought to New York by the steamship *President Lincoln;* that 47 of these bales were marked "H" and numbered from 1 to 47, and that 78 of them were marked "K" and numbered from 1 to 78. Glacken says he was charged with the shipment of this merchandise, and that he shipped it by the Pennsylvania Railroad to the American Glue Co. at Springdale, Pa., in a New York, New Haven & Hartford car numbered 71040. C. T. Sharpless, another witness for the importers, stated that he was superintendent of the Springdale factory of the American Glue Co., and that that company was engaged in the business of manufacturing glue. He testified that on August 23, 1909, 125 bales of glue stock arrived at Springdale in a New York, New Haven & Hartford car numbered 71040; that he examined the bales at the time of arrival at Springdale; and that the official sample submitted to him at the hearing did not represent that carload of merchandise.

So far as we can find, there is nothing in the record except the collector's decision which would justify the conclusion that the sample on which the assessment in this case was made was taken from the importation of the American Glue Co. and not taken from the goods invoiced to Julius Kruchten. It is true that the claim that the sample was taken from the importation is sustained by the presumption of correctness attaching to that decision, but that presumption is overcome, we think, by the clear preponderance of evidence offered by the importers and received by the board at the hearing. The record of the cargo of the *President Lincoln* shows but one consignment to the American Glue Co. and but one importation by that company of merchandise, 47 bales of which were marked "H," numbered 1 to 47, and 78 bales of which were marked "K," and numbered 1 to 78. The testimony is uncontradicted that 125 bales of merchandise brought to New York by the *President Lincoln,* consigned to the American Glue Co., and marked and numbered H, 1 to 47, and K, 1 to 78, were shipped to the company's factory at Springdale over the Pennsylvania lines in a car of the New York, New

Haven & Hartford Railroad numbered 71040. It is also uncontra-
dicted that 12 days after the arrival of the *President Lincoln* 125
bales of merchandise, marked "H" and "K," arrived at the Spring-
dale factory of the American Glue Co. in a New York, New Haven &
Hartford car numbered 71040, and that that merchandise was glue
stock, and was neither rabbit snips nor merchandise of the character
or kind represented by the official sample.

In our opinion these facts proved by the importer established at
least prima facie that the sample of the goods upon which the col-
lector based his assessment was not taken from the importation. No
sample of the goods which came to Springdale was preserved, but the
importer offered to prove by Sharpless their nature and kind and that
they were fairly and accurately represented by an illustrative sample
which was offered in evidence. The board declined to admit the
testimony and refused to accept the illustrative sample as represent-
ative of the goods actually received at Springdale, to which ruling the
importers excepted. The importers having proved, at least prima
facie, that the goods which arrived at Springdale in car No. 71040 of
the New York, New Haven & Hartford Railroad were the same goods
which had been imported for it on the *President Lincoln* and assessed
by the collector as fur waste, should have been permitted to show the
nature and character of the goods which were actually received at
Springdale, and the board erred in refusing to allow them to make
such proof.

King Upton, vice president of the American Glue Co., testified that
the company made glue out of the 125 bales of merchandise which
came on the *President Lincoln,* and that the official sample was not
only not glue stock, but that glue could not be made out of it. To
this testimony on the part of Upton that the official sample was not
glue stock and that glue could not be made out of it the Government
objected, which objection was sustained, and the importer excepted.
It having been established prima facie that the consignment received
at Springdale from the *President Lincoln* was glue stock and that the
importer made glue out of it, it was entirely proper to show that the
official sample was not glue stock and that glue could not be made
out of that kind of goods.

On a review of the entire record we are satisfied that the interests
of justice will be best subserved by permitting the importing com-
pany to prove the true nature and character of the goods shipped to it
on the *President Lincoln* by J. Hückel's Söhne and actually received
by it at Springdale in New York, New Haven & Hartford car No.
71040.

Whether the importation was glue stock or fur waste was the issue in
this case, and that issue was fully presented by the protest.

The decision of the Board of General Appraisers is *reversed,* and the
case remanded for a new trial.